```
             UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF LOUISIANA
```

**CHRISTIAN STEPHAN BREBURDA**  \*  **CIVIL ACTION**

**VERSUS**  \*  **NO. 05-2816**

**OCHSNER CLINIC FOUNDATION**  \*  **SECTION B(4)**

## ORDER AND REASONS

Ochsner Clinic Foundation ("Defendant") filed a motion for summary judgment pursuant to Federal Rules of Civil Procedure 56. (Rec. Doc. No. 13). For the following reasons, **IT IS ORDERED** that Defendant's motion be **GRANTED.**

## BACKGROUND

On July 1, 2003, Plaintiff, Dr. Christian Stephan Breburda ("Plaintiff") began his employment and obtained his clinical privileges as Defendant's Director of Echocardiography. On March 11, 2004, Plaintiff was notified that an *ad hoc* subcommittee of the Credentials Committee would be appointed to conduct an investigation concerning his clinical competence to interpret echocardiograms. (Rec. Doc. No. 13 at Ex "1"). On March 23, 2004, Plaintiff submitted a letter indicating his desire to terminate his Professional Services Agreement Defendant's alleged breach of the agreement. (Rec. Doc. No. 13 at Ex. "6"). On March 25, 2004, the *ad hoc* subcommittee began its investigation. (Rec. Doc. No. 13 at Ex "7").

On April 1, 2004, Defendant indicated that it would not

1

accept the attempted termination proposal of March 23, 2004, but did offer to terminate Plaintiff's employment by mutual agreement. (Rec. Doc. No. 13 at Ex "8"). In addition to making this offer to terminate by mutual agreement, Defendant informed Plaintiff that the National Practitioner Data Bank ("NPDB") Guidelines mandated a report whenever a physician surrenders clinical privileges while under investigation and that a report would be required in this instance. (Rec. Doc. No. 13 at Ex. "8").

On April 4, 2004, Plaintiff again indicated his desire to terminate his employment with Defendant and requested a copy of the mutual termination agreement. (Rec. Doc. No. 13 at Ex. "9"). The *ad hoc* subcommittee investigation was suspended, pending Plaintiff's request to resign. On April 16, 2004, Defendant sent a letter to Plaintiff offering him the opportunity to withdraw his resignation contingent upon his agreement (by signature) with the terms of the letter. (Rec. Doc. No. 13 at Ex. "10"). Plaintiff did not sign and return this letter to Defendant.

On April 23, 2004, Plaintiff's previous counsel contacted Defendant and asked to withdraw Plaintiff's request to resign and to begin negotiations to reach a termination of Plaintiff's employment through mutual agreement (Rec. Doc. No. 13 at Ex. "11"). On May 5, 2004, Defendant requested an opinion from NPDB as to whether a report to the Data Bank was required when a

physician ends his employment to avoid an investigation or resigns, regardless of motive, after becoming aware that an investigation into his clinical competence has begun. (Rec. Doc. No. 13 at Ex. "12"). On May 21, 2004, Defendant received a reply from the NPDB indicating that a report would be required. (Rec. Doc. No. 13 at Ex. "13").

By June 30, 2004, counsel for both parties indicated agreement on the negotiated terms of Plaintiff's termination by mutual agreement. Such agreement included a Separation Agreement, the language of a report to the NPDB, and language for a reference letter should Defendant receive inquiries regarding Plaintiff. (Rec. Doc. No. 13 at Ex. "14" & "15(A)" and "15(B)").

Plaintiff has not been employed or had clinical privileges with Defendant since June 30, 2004. The NPDB Guidebook requires hospitals to report, within 5 days of the action, any voluntary surrender or restriction of clinical privileges while under, or to avoid, investigation. Defendant submitted a report to the NPDB on July 8, 2004. (Rec. Doc. No. 13 at Ex. "16").

**Contentions of Movant/Defendant:**

Defendant contends that its motion for summary judgment should be granted on several grounds: (1) Defendant is immune from liability pursuant to provisions of the Health Care Quality Improvement Act of 1986, (2) Defendant had a common law duty to report Plaintiff's conduct to the National Practitioner Data Bank

(NPDB), (3) Defendant acted pursuant to a request from the NPDB to file a report regarding Plaintiff's conduct, (4) Jurisprudence supports Defendant's decision to file a report regarding Plaintiff's conduct, and (5) Defendant can not be guilty of defamation because the language of the report was agreed to by Plaintiff and his former counsel and is true and accurate.

**Contentions of Respondent/Plaintiff:**

Plaintiff contends that the Health Care Quality Improvement Act of 1986 does not shield Defendant from liability and that Defendant had no common law duty to file a report regarding Plaintiff's conduct to the NPDB.  Further, Plaintiff contends that neither he nor his former counsel agreed to the terms of the NPDB report and Defendant knowingly and in bad faith submitted the report anyway.  Plaintiff also contends that Defendant knowingly submitted false information about Plaintiff to the NPDB.

## LAW AND ANALYSIS

**A. Summary Judgment Standards**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  The moving party

4

need not produce evidence negating the existence of a material fact, but need only point out the absence of evidence supporting the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party carries its burden pursuant to Rule 56(c), the non-moving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  That burden is not satisfied by merely creating some doubt as to the material facts through "conclusory allegations, unsubstantiated assertions or by only a scintilla of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). In order to demonstrate that summary judgment should not be granted, the non-moving party must "go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Auguster v. Vermillion Parish School Board, 249 F.3d 400, 402 (5th Cir. 2001).

**B.  Federal Law Required Defendant to Report Plaintiff to NPDB**

42 U.S.C. § 11133(a)(1) of the Healthcare Quality Improvement Act of 1986 ("HCQIA") requires a hospital to report, in pertinent part:

5

>  (B) the surrender of clinical privileges of a physician while the physician is under an investigation by the entity relating to possible incompetence or improper professional conduct.

On March 11, 2004, Plaintiff was notified that an *ad hoc* subcommittee of the Credentials Committee would be appointed to conduct an investigation concerning his clinical competence to interpret echocardiograms. Plaintiff was warned by Defendant that the National Practitioner Data Bank("NPDB") Guidelines mandated a report whenever a physician surrenders clinical privileges while under investigation and that a report would be required in his case. Nonetheless, Plaintiff still chose to terminate his employment with Defendant.

Defendant took all necessary precautions to ensure that it did not violate the HCQIA. In a reply to Defendant's inquiry, the NPDB indicated to Defendant that a report would be required if Plaintiff chose to terminate his employment with Defendant while an investigation was pending.  Thus, Defendant complied with the HCQIA in reporting Plaintiff to the NPDB.

**C. Plaintiff Failed to Establish His Defamation Claim**

In order to prevail on his defamation claim, Plaintiff must establish each of the following elements: (1) defamatory words, (2) publication or communication to a person other than the one defamed; (3) falsity; (4) malice, actual or implied; and (5)

injury.  Young v. Equifax Credit Information Services, Inc., 294 F.3d 631 (C.A. 5 (La.) 2002).  Truth, conditional privilege, fair reporting, and justification are absolute defenses to a defamation claim.  Doe v. Doe, 941 F.2d 280 (5th Cir. 1991).

All of the four absolute defenses to defamation apply to this case.  First, the statements in the NPDB report were negotiated with Plaintiff through his previous counsel and were true and accurate.  Second, the conditional privilege applies because Defendant was in good faith when it made the report, the report was required by federal law, and the report was provided directly to the NPDB.[1]  Third, in light of the legal requirement for reporting, the defense of fair reporting also applies.  See, e.g., Stockstill v. Shell Oil Co., 3 F.3d 868 (C.A. 5 (La.) 1993)(filing report with EEOC did not constitute defamation).  Finally, Defendant was justified in filing the report in light of the advisory opinion from the NPDB.

Moreover, Plaintiff did not show that there was any malice on the part of Defendant.  Defendant negotiated a Separation

---

[1] A conditional privilege apples when a communication is made (1) in good faith, (2) on any subject matter in which the entity communicating has an interest or in reference to which it has a duty, and (3) to an entity having a corresponding interest or duty.  Doe, 941 F.2d at 289.  See also Hood v. Dun & Bradstreet, Inc., 486 F.2d 25 (C.A. 5 (Ga.) 1973)(noting that conditional privilege is predicated upon the idea that if no privilege existed, reporting agencies would be driven out of business by the cost of defamation suits).

Agreement with Plaintiff's previous counsel. The language of the Agreement specifically stated that Defendant would not disparage Plaintiff in any way and instructed its employees who may be asked to provided references for Plaintiff to "feel free to provide any information you deem appropriate". Defendant's actions were clearly not malicious. Defendant took extra measures to ensure that Plaintiff would not be prejudiced in anyway when looking for future employment. Consequently, Plaintiff's defamation claim is meritless and should fail.

**D. This Court's Recent Jurisprudence Indicates that Defendant Had a Common Law Duty to Report Plaintiff**

In <u>Kadlec Medical Center v. Lakeview Anesthesia Associates</u>, 2005 WL 1309153, No. 04-0997 (E.D.La. May 19, 2005) (hereinafter "<u>Kadlec</u>"), Lakeview Regional Medical Center ("<u>LRMC</u>") was sued for not responding adequately to a reference request from Kadlec on a former employee who provided anesthesia services. <u>Id.</u> at *1.

In 2000, an audit of narcotic medication records revealed that the employee had failed to properly document withdrawals of the drug Demerol. <u>Id.</u> On March 13, 2001, he failed to respond to hospital pages. <u>Id.</u> The hospital's staff sound him sleeping in a chair, and he appeared to be sedated. <u>Id.</u> LRMC terminated his employment effective that day and his medical privileges expired in September 2001. <u>Id.</u>

Subsequent to his termination, he sought work through a

temporary employment agency and was placed at Kadlec. Id. Kadlec sent a standard inquiry questionnaire to LRMC. Id. LRMC did not complete the questionnaire. Id. Instead, it sent a brief letter stating that the former employee had "been on the active medical staff in the field of anesthesiology at LRMC from March 4, 1997 to September 4, 2001." Id. The letter also stated that limited information was provided due to a "large volume of inquiries received in the office." Id.

In November 2002, the former LRMC employee was the anesthesiologist for a tubal ligation surgery at Kadlec in which a patient suffered extensive brain damage, allegedly due to his impairment and negligence. Id. at *2. In Kadlec's suit against LRMC, this Court recognized a special relationship between LRMC and Kadlec, which existed, in part, to further communication between health care providers so that future patients could be protected:

> Notwithstanding LRMC's contention that "public policy militates against creating a boundless duty to disclose", this Court finds that if and when a hospital chooses to respond to an employment referral questionnaire, public policy should encourage a hospital to disclose the sort of information at issue.

Id. at *7.

This Court went on to find that a hospital owes a duty to an inquiring hospital not to misrepresent directly or by omission material information concerning a physician's previous status at the hospital.[2] Id. at 8-9. A physician could circumvent this jurisprudential duty by failing to indicate that he was on the staff of a particular hospital. In such a case, a NPDB report would be the only way to alert the next hospital of the need to make further inquiry. In light of this and the moral, social, and economic factors set forth in Kadlec, it is clear that there is a common law duty to report to the NPDB under circumstances similar to ones of this case.

For the foregoing reasons, **IT IS ORDERED** that Defendant's motion be **GRANTED.**

New Orleans, Louisiana, this 4th day of April, 2006.

IVAN L.R. LEMELLE
UNITED STATES DISTRICT JUDGE

---

[2]No NPDB report was filed by the hospital in this matter, and this Court did not have before it the precise question of whether a report would have been required.